IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL RIVERA,                    :
                  Plaintiff,      :      1:15-cv-2089
                         :
      v.                            :      Hon. John E. Jones III
                         :
C.O. II SERGEANT R. MCCOY,         :
                  Defendant.      :

# MEMORANDUM

## September 11, 2017

Plaintiff Michael Rivera ("Plaintiff" or "Rivera") commenced this action on October 29, 2015, pursuant to 42 U.S.C. § 1983, against Defendant C.O. II Sergeant R. McCoy ("McCoy"). (Doc. 1). Presently before the Court is McCoy's motion (Doc. 26) for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons set forth below, the motion will be granted.

## I.   STANDARD OF REVIEW

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). "[T]his standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of

*material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original); *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990). A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law. *Id.*; *Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Brotherhood of Carpenters and Joiners of America*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. FED. R. CIV. P. 56; *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); *Wooler v. Citizens Bank*, 274 F. App'x. 177, 179 (3d Cir. 2008). The party

opposing the motion must produce evidence to show the existence of every

element essential to its case, which it bears the burden of proving at trial, because

"a complete failure of proof concerning an essential element of the nonmoving

party's case necessarily renders all other facts immaterial." *Id.* at 323; *see also*

*Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992). "[T]he non-moving

party 'may not rely merely on allegations or denials in its own pleadings; rather, its

response must . . . set out specific facts showing a genuine issue for trial.'" *Picozzi*

*v. Haulderman*, 2011 WL 830331, *2 (M.D. Pa. 2011) (quoting FED. R. CIV. P.

56(e)(2)). "Inferences should be drawn in the light most favorable to the non-

moving party, and where the non-moving party's evidence contradicts the

movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v.*

*BMW of North America. Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

## II.     STATEMENT OF MATERIAL FACTS

During his September 9, 2016 deposition, Rivera acknowledged that he

assaulted Corrections Officer Lewis ("C.O. Lewis") on January 20, 2015, while

housed at the State Correctional Institution at Dallas. (Doc. 29, ¶ 5). During the

assault, C.O. Lewis lost his left eye. (*Id.* at 6). Rivera was sanctioned to 270 days

in the Restricted Housing Unit. (*Id.* at 8).

### A.     Grievance No. 580861

At the end of June or early July 2015, Rivera had his first contact with

Defendant McCoy at SCI Dallas. (*Id.* at 13).  On August 7, 2015, Rivera filed a

grievance accusing Defendant McCoy of engaging in the following conduct:  (1)

threatening to take Rivera's eye out in retaliation for the assault he committed on

C.O. Lewis on January 20, 2015, (2) threatening to fabricate misconduct reports,

(3) threatening to destroy his personal property, (4) calling him names, and (5)

threatening that, along with the assistance of Sergeant Bienkowski, he would "get

[him] back for what [he] did [to C.O. Lewis]." (*Id.* at 15).  On August 8, 2015,

Rivera filed a separate grievance contending that Defendant McCoy stated, "I

don't care who you tell. I'm still coming for that eye when you get transferred. I'll

see you in the ID room…." (*Id.* at 16).  The grievances were consolidated and

assigned Grievance Number 580861. (*Id.* at 17).  On August 10, 2015, the

Grievance Coordinator informed Rivera that, because of his allegation of abuse, an

investigation would be conducted by the Office of Special Investigations and

Intelligence ("OSII") in accordance with DC-ADM 001. (*Id.* at 20).

Rivera's grievance was denied on August 24, 2015. (*Id.* at 21).  Rivera

appealed and indicated, for the first time, that he had ten unsworn declarations

from other inmates. (*Id.* at 22).  He did not name the inmates or submit the

declarations. (*Id.*) On September 1, 2015, the Facility Manager upheld the denial of the grievance. (*Id.* at 27). On September 4, 2015, Rivera appealed to the Secretary's Office of Inmate Grievances & Appeals ("SOIGA"); SOIGA referred the grievance to OSII. (*Id.* at 28, 29).

The OSII Investigation Report dated November 3, 2015, found that Rivera's allegations of inmate abuse were unsubstantiated. (*Id.* at 30, 32; Doc. 28-6, pp. 4-6). In the Summary of Findings, Security Lt. McNulty noted that Rivera refused to be brought to security for an interview and refused to identify the inmates who wrote unsworn declarations. (*Id.* at 32-34; *Id.* at 5). Defendant McCoy was interviewed and denied all allegations and asserted that he carried himself in a professional manner. (*Id.* at 35); *Id.*).

On December 10, 2015, SOIGA cited to the findings in the OSII Report and upheld the denial of Rivera's grievance. (*Id.* at 30; Doc. 28-5, p. 58). On December 22, 2015, the Chief Grievance Officer from SOIGA upheld the denial citing to the OSII investigation and all other levels of review. (*Id.* at 31; *Id.* at p. 59).

Attached to Rivera's complaint are a number of declarations purportedly penned by fellow inmates housed in the RHU at the relevant time. (Doc. 1-3, pp. 2-11, 19-21, 25-28, 32-38). The declarations contain the fellow inmates' versions

of the August 7, 2015, and August 8, 2015, exchanges between Rivera and

Defendant McCoy. (*Id.*)  All were executed on either August 7, 2015, or August 8,

2015.  (*Id.*)

###### B. Misconduct No. B356040

On August 21, 2015, Defendant McCoy issued Misconduct No. B356040

charging Rivera with the Class 1, Category A offense of using abusive, obscene or

inappropriate language to an employee.  (*Id.* at 40; Doc. 28-7, p. 55).  Defendant

McCoy described the incident as follows:

> On the above time and date I approached Kb cell 36 to strip Inmate
> Rivera due to him being signed up for yard.  Inmate Rivera was sitting
> on his bed fully dressed.  I informed Rivera that in the future he
> needed to be standing at his door with his clothes in his hand or he
> would be refused yard.  Inmate Rivera stated, "F*** you, McCoy, No
> one ELSE makes me do that."  I told Rivera that that is policy and
> that's how I do things.  Inmate Rivera stated, "Your [sic] a F******
> A**hole" and began kicking his property around his cell.  At that
> time, due to him becoming irate, I moved on the [sic] the next cell on
> my yard list.

(Doc. 28-7, p. 55).  In the "Inmate's Version" of events, Rivera stated that McCoy

fabricated the misconduct and issued it in retaliation for the grievances Rivera filed

against him earlier in August.  (*Id.* at 56).  He also contended that he has "yet to

utter a single word to Sgt. McCoy" but that McCoy continues to instigate and

engage him in verbal confrontation because of the assault on C.O. Lewis.  (*Id.* at

57).  For purposes of the misconduct hearing, Rivera requested the assistance of a

staff member and three witnesses, C.O. Silvette because he was present on August 21, 2015, and Inmates Gray and Davis because they had witnessed Defendant McCoy's conduct during previous incidents on August 8 and 9, 2015.  (Doc. 29, ¶ 41).

The hearing was conducted on August 12, 2015.  (Doc. 28-7, p. 58).  C.O. Silvette was permitted to testify; he testified that Defendant McCoy approached Rivera's cell and advised him that he had to be stripped and standing to be searched.  (*Id.*)  He further testified that Rivera complained that no one else requires him to follow that procedure and stated "F*** you."  (*Id.*)  The Hearing Examiner concluded the following:  "I believe Sgt McCoy's written report which is supported by C.O. Silvette's testimony, over I/M Rivera's version.  I believe that Sgt McCoy advised Rivera that Rivera had to be standing in front of the cell with his clothes in his hand ready to be searched for yard when the officers came around and that Rivera responded "F*** you McCoy no one else makes me do that," thus using abusive and obscene language to the Sergeant."  (*Id.* at 58-60).  Rivera was found guilty and sanctioned with thirty days disciplinary custody status. (*Id*. at 60). Rivera appealed the misconduct through all levels of review and, at each level, it was determined that there were no procedural irregularities and that there was

sufficient evidence to support the Hearing Examiner's finding of guilt. (*Id.* at 61-67).

Rivera attaches to his complaint the declarations of three fellow inmates, all of whom declare that they overheard Defendant McCoy threaten Rivera with "falsified misconducts" when he stated something akin to "What? Are we going to exchange paperwork every time I work? I got something for you, pussy, and I'm going to keep writing your faggot ass up, you piece of shit." (Doc. 1-3, pp.12-14, ¶ 4; p. 22, 23; p. 29, 30, ¶ 4). All declarations were executed on August 21, 2015. (*Id.* at pp. 14, 29, 30).

## C. Misconduct No. B356061

On September 8, 2015, Defendant McCoy issued Rivera Misconduct Report B356061 charging him with two Class 1, Category B offenses, Refusing to Obey an Order and Possession of Contraband. (Doc. 28-17, p. 69). The report stated as follows: "On the above time and date I observed a cup sitting on the desk of Cell 36. Inmate Rivera was sitting on his bunk. I ordered Inmate Rivera to give me the cup as cups are not allowed to be stored in cells. Inmate Rivera did not respond. I then gave Inmate Rivera a second order in a much louder voice, to give me the cup. Inmate Rivera looked directly at me and did not respond." (*Id.*) In his written inmate version, Rivera stated that "McCoy is being allowed to retaliate

against me for filing grievance 580861, by falsifying another misconduct report."
(Id. at 71). He stated that the only item on the desk was an orange. (*Id.*) He did
not request any witnesses for the misconduct hearing. (Doc. 28-4, p. 48: 14-20).

Rivera testified at the hearing and submitted his written version of the
events. The Hearing Examiner concluded "I believe Sgt. McCoy's written report
over Rivera's version. I believe Sgt McCoy gave I/M Rivera a direct order to hand
over a cup and Rivera refused that order and retained the contraband." (Doc. 28-7.
p. 70). Rivera was found guilty and sanctioned with thirty days disciplinary
custody status and removal of the contraband. (*Id.*) Rivera appealed the
misconduct through all levels of review and at each level, it was determined that
there were no procedural irregularities and that there was sufficient evidence to
support the Hearing Examiner's finding of guilt. (*Id.* at 72-77).

Rivera attaches to his complaint two declarations from fellow inmates
recounting their version of the events of September 8, 2015. (Doc. 1-3, pp. 15-17,
36-38). Both declarations were executed on September 8, 2015. (*Id.* at 17, 38).
According to the declarations, McCoy ordered Rivera to give him a cup and Rivera
responded "What cup?" (*Id.*at 16 ¶ 5, 36, ¶ 5). They both indicate that McCoy
then stated "This is the second direct order I'm giving you dick head. Now give
the cup or else." (*Id.*; *Id.*) Rivera responded "All I have is an orange on my desk. I

don't have any cups to give to you." (*Id.* at 16, ¶ 6; *Id.* at 37, ¶ 6). Rivera reported

to both inmates that he did not have any cups in his cell. (*Id.* at 16, ¶ 8; *Id.* at 37, ¶

8).

## III.   DISCUSSION

Section 1983 of Title 42 of the United States Code offers private citizens a

cause of action for violations of federal law by state officials.  *See* 42 U.S.C. §

1983.  The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress. . . .

*Id.; see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002*); Kneipp v.*

*Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).  To state a claim under § 1983, a

plaintiff must allege "the violation of a right secured by the Constitution and laws

of the United States, and must show that the alleged deprivation was committed by

a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988).

Rivera claims that Defendant McCoy violated his First Amendment rights

when he issued him Misconduct Nos. 356040 and 356061, in retaliation for filing

Grievance No. 580861.  Retaliation for expressive activities can infringe upon an

10

individual's rights under the First Amendment. *See Allah v. Seiverling*, 229 F.3d

220, 224-25 (3d Cir. 2000). These rights are lessened, but not extinguished in the

prison context. *See Turner v. Safley*, 482 U.S. 78, 89 (1987). The fact of

incarceration and the valid penological objectives of deterrence of crime,

rehabilitation of prisoners, and institutional security justify limitations on the

exercise of constitutional rights by inmates. *See Pell v. Procunier*, 417 U.S. 817,

822–23 (1974). Thus, a prison inmate "retains [only] those rights that are not

inconsistent with his status as a prisoner or with the legitimate penological

objectives of the corrections system." *Id.* at 822.

To establish a *prima facie* retaliation claim under 42 U.S.C. § 1983, a

plaintiff "must prove that: (1) his conduct was constitutionally protected; (2) he

suffered an adverse action at the hands of prison officials; and (3) his

constitutionally protected conduct was a substantial or motivating factor in the

decision to discipline him." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016).

With respect to the third element, "once a prisoner demonstrates that his exercise

of a constitutional right was a substantial or motivating factor in the challenged

decision, the prison officials may still prevail by proving that they would have

made the same decision absent the protected conduct for reasons reasonably related

to a legitimate penological interest." *Rauser v. Horn*, 241 F.3d 330, 334 (3d Cir.

2001). This is a "deferential standard" meant to take into account "that the task of prison administration is difficult, and that courts should afford deference to decisions made by prison officials, who possess the necessary expertise." *Id.*

Rivera clearly meets the constitutionally protected prong in that his ability to file grievances against prison officials is a protected activity for purposes of a retaliation claim. *See Milhouse v. Carlson*, 652 F.2d 371, 373–74 (3d Cir.1981) (finding retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution). The second prong requires a plaintiff to demonstrate that he suffered "adverse" action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *See Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). Rivera also meets this prong as the receipt of two separate misconduct reports that resulted in service of disciplinary custody time constitutes "adverse" action. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2002) (holding that prisoner's allegation that he was falsely charged with misconduct in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); *Allah*, 229 F.3d at 225 (holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim).

The third prong requires that there be a causal link between the exercise of the constitutional right and the adverse action taken against the prisoner. *Rauser*, 241 F.3d at 333–34. This may be established by evidence of "(1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory adverse action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007); *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir.2003) (holding that the temporal proximity between the protected conduct and the alleged retaliatory action must be "unusually suggestive" before the court will infer a causal link) (citing *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503–04 (3d Cir. 1997)). Rivera filed his grievances on August 7, 2015, and August 8, 2015. The initial misconduct was issued on August 21, 2015, approximately fourteen days after the grievances, and the second misconduct was issued on September 8, 2015, about thirty one days after the filing of the grievances. The timing of these misconducts reports is not unusually suggestive. Nor does their issuance demonstrate a pattern of antagonism. However, Rivera submits contemporaneous declarations purportedly authored by fellow inmates, also housed in the RHU in close proximity to him at the relevant time, that detail incidents and events on the pertinent dates that suggest a pattern of antagonism coupled with timing between

13

the filing of Grievance No. 580861 and the issuance of Misconduct Reports

B356040 and B356061, sufficient to establish a causal link. (Doc. 31, ¶¶ 19, 22,

25; Doc. 1-3, pp. 1-38). Rivera therefore satisfies the third prong.

As noted *supra*, if the prisoner establishes a *prima facie* case of retaliation,

as is the case here, the burden then shifts to prison officials to show by a

preponderance of the evidence that "they would have made the same decision

absent the protected conduct for reasons reasonably related to a legitimate

penological interest." *Rauser*, 241 F.3d at 334. We reiterate that the Court must

bear in mind that the task of prison administrators and staff is difficult, and the

decisions of prison officials require deference, particularly where prison security is

concerned. *Id.* When "evaluating the legitimacy of a misconduct report, [the

Court] considers 'the quantum of evidence of the misconduct to determine whether

the prison officials' decision to discipline an inmate for his violations of prison

policy was within the broad discretion [the Court] must afford them.' " *Williams v.*

*Folino*, 664 F. App'x. 114, 148-149 (3d Cir. 2016) (quoting *Watson v. Rozum*, 834

F.3d at 426).

On August 21, 2015, McCoy charged Rivera with using abusive, obscene or

inappropriate language in Misconduct No. B356040. (Doc. 28-7, p. 55). Rivera

testified at the hearing and offered his written version of the events. He also called

C.O. Silvette as a witness. C.O Silvette stated that Defendant McCoy approached Rivera's cell and advised him that he had to be stripped and standing to be searched. (Doc. 28-7, p. 58). He further testified that Rivera complained that no one else requires him to follow that procedure and stated "F*** you." (*Id.*) In finding Rivera guilty of using obscene inappropriate language, the Hearing Examiner stated that he believed Defendant McCoy's written report, which was supported by C.O. Silvette's testimony, over Rivera's version of the events. (*Id*. at 60). Rivera appealed the misconduct through all levels of review and it was unanimously concluded that there were no procedural irregularities during the hearing and that there was sufficient evidence to support the Hearing Examiner's finding of guilt. (*Id.* at 61-67).

Defendant McCoy issued Rivera Misconduct Report B356061 charging him with two Class 1, Category B offenses, Refusing to Obey an Order and Possession of Contraband on September 8, 2015. (Doc. 28-17, p. 69). Rivera testified at the hearing and submitted his written version of the events of September 8, 2015. He indicated that there was an orange on his desk, not a cup. He did not request any witnesses and none were called to testify. After review of the evidence, the Hearing Examiner concluded "I believe Sgt. McCoy's written report over Rivera's version. I believe Sgt McCoy gave I/M Rivera a direct order to hand over a cup

and Rivera refused that order and retained the contraband." (*Id.* at 70). Rivera appealed the misconduct through all levels of review and at each level, it was determined that there were no procedural irregularities and that there was no reason to disturb the Hearing Examiner's findings of guilt. (*Id.* at 72-77).

Attached to Rivera's complaint are the declarations of two fellow inmates who claim to be witnesses to the September 8, 2015 incident. (Doc. 1-3, pp. 15-17, 36-38). Rivera did not request that either inmate be present at the misconduct hearing. Nor did he offer their declarations as evidence, despite the fact that they were executed, and presumably in Rivera's possession, prior to the date of the hearing. Notwithstanding, in essence both inmates confirm that there was an exchange between Rivera and McCoy during which Rivera did not comply with an order. According to the declarations, McCoy ordered Rivera to give him a cup and Rivera responded "What cup?" (*Id.*at 16 ¶ 5, 36, ¶ 5). They both indicate that McCoy then stated "This is the second direct order I'm giving you dick head. Now give the cup or else." (*Id.*; *Id.*) Rivera responded "All I have is an orange on my desk. I don't have any cups to give to you." (*Id.* at 16, ¶ 6; *Id.* at 37, ¶ 6). Rivera reported to both inmates that he did not have any cups in his cell. (*Id.* at 16, ¶ 8; *Id.* at 37, ¶ 8). Significantly, neither inmate witnessed whether or not there was a cup, or for that matter, an orange, in Rivera's cell.

Given the quantum of evidence supporting the findings of guilt on Misconduct Reports B356040 and B356061, we conclude that the issuance of the misconduct reports was reasonably related to legitimate penological interests and within the broad discretion afforded prison officials in addressing violations of prison policies.  Consequently, Rivera's retaliation claim fails.

## IV.    CONCLUSION

Based on the above, Defendant McCoy's motion (Doc. 26) for summary judgment will be granted.

An appropriate Order will issue.